# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **STORMY WILLIAMS,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:18-cv-927-CLS** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Claimant, Stormy Williams, commenced this action on June 18, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that: (1) she met the requirements of Listings 12.04, 12.05, and 12.06; (2) the ALJ improperly considered the medical opinions in the record; and (3) the ALJ's residual functional capacity finding was not supported by substantial evidence. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision is due to be affirmed.

## I. LISTINGS

Claimant asserts that she meets the requirements of Listing 12.04, governing depressive, bipolar, and related disorders; Listing 12.05, governing intellectual disorders; and Listing 12.06, governing anxiety and obsessive-compulsive disorders. Each of those Listings requires proof of

> extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.05B.2, 12.06B.

The ALJ found no more than moderate limitations in any of those functional areas, saying that:

In understanding, remembering, or applying information, the claimant has mild limitation. In interacting with others, the claimant has moderate limitation. With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation[s]. As for adapting or managing oneself, the claimant has no limitation. The claimant cares for her four children. She gets them up and ready for school. She bathes and feeds her children. She cares for the younger ones not in school. She has a boyfriend with whom she spends time. She is independent with daily activities and personal care. She cleans and does laundry. She prepares meals for her[self] and her children. She cleans and does laundry. She drives and shops. She watches television with no problems. She is social with family. She alleged concentration and memory problems, yet she is able to run a household, watch television with no problems, and follow spoken instructions. In addition, she was able to testify at the hearing with no memory problems.

Tr. 15 (alterations supplied). *See also id.* ("[T]here is no evidence whatsoever of significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two areas of mental functioning.") (alteration supplied).

Claimant points to the following evidence to contest the ALJ's findings: (1) consultative examiner Dr. David Wilson's statements that claimant's "ability to withstand the pressures of day to day occupational functioning is highly impaired," and she "is not capable of managing benefits";[1] (2) claimant's hearing testimony that she had to take the driver's license examination multiple times, and that she couldn't sit still, pay attention, or comprehend things in school;[2] (3) the diagnoses of anxiety

---

[1] Tr. 522.
[2] Tr. 48-49.

disorder in claimant's medical record;[3] (4) consultative examiner Dr. Jack Bentley's assessment;[4] and (5) claimant's testimony of weekly panic attacks.[5]

The ALJ did not fully credit the consultative examiners' opinions, and her decision not to do so will be discussed in the following section. Claimant's panic attacks would have been relevant to the "A" requirements of Listing 12.06,[6] but they are not relevant to the "B" requirements. Finally, a diagnosis of anxiety disorder,

---

[3] Tr. 498, 546, 550, 564, 570, 727, 730, 733, 739, 744, 749, 757, 762, 767, 772, 779, 785, 790, 794, 800, 819, 867, 873.

[4] Tr. 510-13.

[5] Tr. 47-48.

[6] The "A" requirements of subsection Listing 12.06 are:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

    1. Anxiety disorder, characterized by three or more of the following:
        a. Restlessness;
        b. Easily fatigued;
        c. Difficulty concentrating;
        d. Irritability;
        e. Muscle tension; or
        f. Sleep disturbance.

    2. Panic disorder or agoraphobia, characterized by one or both:
        a. *Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences*; or
        b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

    3. Obsessive-compulsive disorder, characterized by one or both:
        a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
        b. Repetitive behaviors aimed at reducing anxiety.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06B (emphasis supplied).

subjective testimony about some unspecified trouble paying attention in school, and failing a driver's license examination do not equate to marked or extreme limitations in the functional areas described in the B criteria.

Because claimant has not established the B criteria of Listings 12.04, 12.05, and 12.06, the ALJ did not err in failing to find her disabled under those Listings.

## II. PHYSICIAN OPINIONS

Claimant asserts that the ALJ improperly considered the opinions of the treating and examining physicians. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision on that issue is not a medical question, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d).

Social Security regulations also provide that, when considering the weight to

be given *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

## A.    Dr. Ginas

Dr. Douglas Ginas, claimant's treating physician, completed a "Physical Capacities Form" on April 17, 2017. He stated that claimant could sit for one hour at a time and stand for thirty minutes at a time. She would need to lie down with her legs propped up three hours in an eight-hour day. She would be off-task fifty percent of an eight-hour work day. During a thirty-day period, she would fail to report to work seven or eight days as a result of her medical conditions. Her limitations were not affected by drug or alcohol use. Instead, they were a result of degenerative disc disease in her spine, residuals from a motor vehicle accident, pain syndrome, anxiety syndrome, and radiculopathy. Claimant would experience sedation and constipation

as a result of her medications.[7]

The ALJ did not specifically state the weight she afforded to Dr. Ginas's opinions, but it is evident that she did not afford them much weight. She stated:

> The claimant's doctor at Rapid Care, Douglas Ginas, M.D., completed a Physical Capacities Form on April 17, 2017[,] and opined the claimant was not capable of performing even sedentary work. However, there is no evidentiary support for these restrictions. There is no objective evidence, even in her pain management records. In fact, recent treatment notes document her pain is well-controlled with her current medication regimen. The undersigned attempted to supplement the record to get objective evidence, as the only consultations were mental status evaluations, but the claimant did not report [to] the CE as requested.

Tr. 20 (alterations supplied).

Other than stating general principles about the deference to be afforded treating physician opinions, claimant does not make any argument about why the ALJ's consideration of Dr. Ginas's assessment was improper. The court finds that the ALJ articulated good cause for rejecting the assessment, and her decision was supported by substantial evidence. On April 14, 2017, just three days before Dr. Ginas completed the Physical Capacities Form, claimant reported to Dr. Ginas that, with medication, her pain was at a level 4 of 10, and she could perform her daily living activities.[8] Claimant either made the same report, or stated that her pain level was 5

---

[7] Tr. 876.

[8] Tr. 58, 61.

or 6 on medication, on May 17,[9] June 23,[10] July 21,[11] August 17,[12] September 25,[13] and October 10, 2017.[14]   In addition, Dr. Ginas's opinion was inconsistent with claimant's daily activities, including caring for her four children, preparing meals, cleaning, doing laundry, paying bills, driving, shopping, watching television, and socializing with family, as well as with claimant's ability to complete her function report and other forms, follow oral instructions, and manage her household.[15]

## B.    Dr. Jack Bentley

Jack Bentley, Jr., Ph.D., LPC, performed a consultative mental status examination on January 21, 2015.[16]   Claimant presented with no limitations in her receptive or expressive communication skills, intact memory, moderately disheveled appearance, moderately dysphoric mood, obvious agitation over pain in her chest, restlessness, and agitation when discussing her health and psychiatric difficulties. She was alert and oriented, could correctly recall two of three objects after a five-minute delay, and could recite six digits forward and four backward.  She could not state the number of weeks in a year, the direction in which the sun rises, or the author

---

[9] Tr. 64.

[10] Tr. 70.

[11] Tr. 76.

[12] Tr. 83.

[13] Tr. 88.

[14] Tr. 99.

[15] Tr. 20-21.

[16] Tr. 510-13.

of Hamlet, and she failed to interpret two proverbs and state the analogy in one simple abstraction. She could spell the word "world" forward and backward, perform serial 7's and 3's from 100, count backwards from 20 to 1, and identify national leaders, but she could not identify any state officials. Claimant reported marked to severe sleep disturbance as a result of anxiety and abdominal pain. She spends most of her days caring for her four children, and she has no hobbies. She does household chores and her daily living activities, but she has to stop frequently to rest. Dr. Bentley assessed claimant with crystal methamphetamine induced mood disorder, polysubstance abuse, status-post repair of right femur with metal hardware and subsequent complications, and stage 4 Hepatitis C. Dr. Bentley noted that claimant had obvious difficulties sustaining concentration, and he also stated:

> The patient is competent to manage funds, should they be awarded. There was no evidence of symptom exaggeration. The prognosis for her current level of functioning is considered favorable.

> Based on the results of this [mental status examination], the patient would have a marked to severe limitation in her ability to sustain complex or repetitive work related activities. Her obvious agitation, loss of concentration and mood swings would significantly impair her ability to perform these tasks in a timely manner. There is a similar restriction in her ability to communicate effectively with coworkers and supervisors. She would have a mild to moderate limitation in her ability to perform simple work-related activities. Her most significant work restrictions do stem from her history of the liver infection with subsequent fatigue and abdominal pain. Restrictions associated with her liver infection would need to be assigned by an appropriately trained physician.

Tr. 513 (alteration supplied).

The ALJ noted that, because Dr. Bentley was a licensed professional counselor, he was not an "acceptable medical source" under Social Security regulations, and his opinion could not support the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 416.902(a)(1)-(2) (defining the term "acceptable medical source" as including licensed physicians and licensed psychologists, but not licensed professional counselors), 416.913(a). Even so, because Dr. Bentley performed a full evaluation and gave a detailed opinion in his area of expertise, the ALJ still considered his opinion pursuant to 20 C.F.R. § 416.927(f), to evaluate the effects of claimant's impairments on her ability to function.[17] The ALJ afforded "some weight" to Dr. Bentley's assessment, stating:

> While [claimant] should certainly not work in a complex job due to her history of anxiety and panic, her education level, and history of drug use, there is no evidence she would be unable to perform a job with simple instructions or repetitive activities. The anxiety and panic is [*sic*] controlled with her medication when she takes it. She is capable of caring for her children throughout the day, she does household chores with no problems, and she is independent with daily activities. He also opined her most significant work restrictions stem from her history of the liver infection with subsequent fatigue and abdominal pain, but she has little treatment for these, and this is not his area [of] expertise.

Tr. 19 (alterations supplied).

## C.    Dr. David Wilson

---

[17] Tr. 18.

10

David Wilson, Ph.D., a licensed psychologist, performed a consultative psychological evaluation on February 19, 2017.[18]  He reviewed claimant's medical records and Dr. Bentley's assessment prior to the exam.  He characterized claimant's thought process during the clinical interview as "problematic," because she was not good with details and tended to ramble.  Her speech was clear and normal in rate.  She reported talking to herself, but denied any other indicators of hallucinations, delusions or ideas of reference.  She described some indicators of obsessive compulsive behavior, including needing to align her phone and cigarettes and needing to repeat activities with both hands.  She sometimes has panic attacks, with the last one occurring a month and a half earlier.  Her affect was "a bit expansive," and she reported frequent and sudden mood changes and trouble sleeping.  Her insight and judgment were poor.  Her reported daily activities included taking care of her children and spending time with her boyfriend.  On intelligence testing, she received a verbal comprehension score of 76, a perceptual reasoning score of 77, a working memory score of 71, a processing speed score of 74, and a full scale IQ score of 70, placing her in the low end of the borderline range of intellectual functioning.  Her pain patient profile indicated that she experienced clinically significant levels of anxiety and depression, along with serious somatic problems.  Dr. Wilson's summary statement was as follows:

---

[18] Tr. 517-24.

Stormy presented as a very distressed and disturbed individual. It was difficult to get clear and coherent information about her — she was very scattered in her approach, and this was also very apparent during the cognitive testing. She was anxious and appeared to have difficulty thinking clearly. She has a history of severe sexual abuse, as well as ongoing physical abuse in relationships as an adult. She also has severe physical problems which could make it very difficult for her to work. She has a history of substance abuse, but she does not appear to be using. She is on medication, but it does not seem to be helping much. She has never had any formal mental health treatment. She has cognitive deficits and very deficient reading skills. She is clearly not capable of working. Her ability to withstand the pressures of day to day occupational functioning is highly impaired. She is not capable of managing benefits.

Tr. 522. He assessed claimant with bipolar disorder, history of polysubstance abuse, post traumatic stress disorder, borderline intellectual functioning, personality disorder (not otherwise specified), hepatitis C, kidney problems, and a history of multiple motor vehicle accidents.[19]

Dr. Wilson also completed a "Mental Health Source Statement" form. He indicated that claimant could not understand, remember, or carry out very short and simple instructions; maintain attention, concentration, and/or pace for periods of at least two hours; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; or maintain socially appropriate behavior and adhere to basic standards

---

[19] Tr. 522-23.

of neatness anc cleanliness. During a thirty-day period, she would fail to report to work all thirty days as a result of her psychological symptoms.[20]

> The ALJ afforded no weight to Dr. Wilson's assessment because it was
>
>> not consistent with the evidence whatsoever. While the claimant certainly has some limitations due to depression and anxiety, he seemed to rely heavily on the claimant's subjective complaints. The claimant's medication adequately controls her symptoms. While her IQ scores are low, she is capable of managing her day-to-day activities. She manages her children. She prepares meals and does housework. She goes shopping. She can follow spoken instructions. She completed her disability forms and function reports, etc. She and her friend completed Function Reports that list a wide-range of activities. She certainly functions day to day at a higher level than opined by Dr. Wilson. No other doctor has stated such extreme limitations. It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored . . . .

Tr. 20. The ALJ also noted that claimant had never reported hallucinations or obsessive-compulsive behavior to any other medical provider.[21]

Claimant asserts that the ALJ erroneously substituted her own medical judgment for that of the consultative examiners when she rejected the examiners' assessments. Her argument consists entirely of citations to cases stating general principles of law; she does not explain why or how the ALJ ruled improperly. As

---

[20] Tr. 524.
[21] Tr. 19.

such, claimant's argument is not persuasive. To the contrary, the record demonstrates that the ALJ properly weighed the consultative examiners' opinions in evaluating claimant's residual functional capacity, and she adequately articulated her reasons for not giving full weight to those opinions. Moreover, her conclusions were supported by substantial evidence. Accordingly, the ALJ did not err in evaluating the consultative examiners' opinions.

## III. SUBSTANTIAL EVIDENCE

Finally, claimant asserts that the ALJ's decision was not supported by substantial evidence because the ALJ did not include all of her impairments in the hypothetical question posed to the vocational expert during the administrative hearing. *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*)) ("'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"). According to claimant, the ALJ should have included the additional impairments of being off task 20% of the day; inability to understand, remember, and carry out short and simple instructions; inability to maintain attention, concentration, and pace for at least two hours, and being absent more than two days a month.[22] Those additional limitations are from the assessments of Drs. Ginas and

---

[22] Doc. no. 10 (Claimant's Brief), at 42.

Wilson, and it already has been determined that the ALJ properly rejected those physicians' opinions.  Accordingly, claimant's argument is without merit.

## IV. CONCLUSION

Based on the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A separate final judgment will be entered contemporaneously herewith.

DONE this 11th day of March, 2019.

_____
United States District Judge